**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

STEVEN MULLINS,                                              Case No. 1:15-cv-104

                        Plaintiff,                           Beckwith, J.
                                                             Bowman, M.J.
            v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Steve Mullins filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff filed applications for both Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") on November 28, 2011, alleging a disability onset date of September 27, 2004 based primarily upon back pain. Plaintiff's applications were denied initially and upon reconsideration, and he timely requested an evidentiary hearing. In July 2013, Administrative Law Judge ("ALJ") Ena Weathers held a hearing, at which Plaintiff appeared with counsel; both Plaintiff and a vocational expert testified. ALJ Weathers issued a decision on September 26, 2013, concluding that Plaintiff was

1

not disabled.  (Tr. 20-32).  The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner.  Plaintiff filed the instant complaint in order to challenge the ALJ's decision.

Plaintiff was 40 years old at the time his alleged disability began, was 46 at the time his DIB insured status expired on December 31, 2010, and was 49, in the "closely approaching advanced age" category, at the time of ALJ's decision.  He has a high school education and past relevant skilled work as a floor installer, performed at the medium exertional level.  (Tr. 30).

Plaintiff alleges that he is disabled due to degenerative disc disease, mood disorder, and generalized anxiety disorder, all of which the ALJ agreed were "severe" impairments.  (Tr. 22).  However, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability.  (Tr. 23).  Rather, the ALJ concluded that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of sedentary work, except:

> [t]he claimant cannot climb ladders, ropes, and scaffolds; he can occasionally stoop, crawl, crouch, and climb ramps and stairs; he can occasionally operate foot controls with his left lower extremity; he needs to change positions for one or two minutes every hour without interruption of his work; he is restricted to performing simple and routine non-tandem tasks with no strict production demands; and, he can have only occasional interaction with coworkers, supervisors, and the public.

(Tr. 24).

Based on the testimony of the vocational expert, the ALJ determined that although Plaintiff could not return to his prior skilled work, he could still perform the

requirements of representative unskilled jobs such as assembler, packer, and inspector. Therefore, the ALJ concluded that Plaintiff is not under a disability.  (Tr. 31).

In his statement of errors, Plaintiff argues that the ALJ erred by: (1) failing to give controlling weight to Dr. Murthy's opinion in determining Plaintiff's mental RFC; (2) failing to consult a medical expert prior to determining Plaintiff's physical RFC; (3) improperly assessing Plaintiff's credibility; and (4) using an incomplete hypothetical question that did not accurately portray Plaintiff's physical and mental impairments.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability."  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

4

**B. Specific Errors**

**1. Determination of Plaintiff's Mental RFC**

Plaintiff first argues that the ALJ erred by improperly evaluating the mental RFC opinion of treating psychiatrist, Dr. Murthy.  Dr. Murthy completed a mental capacity assessment form on May 8, 2013.  In that form, Dr. Murthy opined that Plaintiff has only "moderate" impairment in his abilities to remember locations and work-like procedures, and to understand/remember/carry out short and simple instructions, but "marked" impairment to understand, remember, and carry out detailed instructions.  Dr. Murthy also found "moderate" impairments in Plaintiff's ability to sustain an ordinary routine without special supervision, in his ability to work in coordination or in proximity to others, and to make simple work-related decisions and interact appropriately with the general public.  (Tr. 534-545).  The referenced portion of Dr. Murthy's opinions are consistent with the mental RFC determined by the ALJ, limiting Plaintiff to "simple and routine non-tandem tasks with no strict production demands" and "only occasional interaction with coworkers, supervisors, and the public."

By contrast, several of Dr. Murthy's opinions are inconsistent with the RFC determined by the ALJ and would be work-preclusive.  In particular, Dr. Murthy opined that Plaintiff had "marked" impairments, defined as "cannot generally perform satisfactorily" in the areas of completing a normal workday without interruptions from his psychological symptoms, or performing at a consistent pace with only standard rest periods.  He further opined that Plaintiff had "marked" impairment in accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers, maintaining socially appropriate behavior and adhering to

5

basic standards of neatness and cleanliness, or setting realistic goals or making plans independently of others.  (Tr. 534-535).  With regard to the last marked impairment, Dr. Murthy left blank a question that asked him to describe the medical/clinical findings that supported his assessment.

In addition, Dr. Murthy found "extreme" impairments, defined as "no useful ability to function," in the areas of maintaining concentration and attention for extended periods, performing activities with a schedule, maintaining regular attendance, being punctual within customary tolerances, or completing a normal workweek without interruption from psychologically based symptoms.  Last, he opined that Plaintiff would likely miss more than four days of work per month.  Only one portion of the three-page check-box form includes any narrative, offering the following explanation for some (but not all) of Dr. Murthy's opinions: "before he came to see me on 1/18/12, without noticeable improvements.  He is on Valium 5 mg bid for his anxiety at this time."  (Tr. 535).

The relevant regulation provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R.  §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings

alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).  Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."  *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Despite the presumptive weight given to the opinions of a treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion. These factors include, but are not limited to: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2). "[A] finding that a treating source medical opinion...is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p).

An ALJ must give "good reasons" for rejecting the opinion of a treating physician. *See* Soc. Sec. Ruling 96-2p, 1996 WL 374188 (July 2, 1996); *see also* 20 C.F.R. §1527(c)(2)("We will always give good reasons…for the weight we give your treating source's opinion.").  If an ALJ rejects the opinion of a treating physician without

7

providing "good reasons," this Court will reverse, absent a clear determination that the opinion was so "patently deficient that the Commissioner could not possibly credit it," or that the procedural error was otherwise harmless. *See Wilson v. Com'r of Soc. Sec.*, 378 F.3d at 547. Plaintiff argues that in this case, the ALJ failed to give "good reasons" for rejecting the most extreme opinions of Dr. Murthy.

The ALJ acknowledged that Plaintiff began seeing Dr. Murthy in 2012. The ALJ's analysis reads:

> Dr. Murthy's notes are very difficult to read, but it appears that he prescribed the claimant Seroquel and Vistaril…. Dr. Murthy completed a mental residual functional capacity assessment…in May 2013 (Exhibit 12F).

(Tr. 27). The ALJ discounted Dr. Murthy's opinions because Plaintiff

> has had little mental health treatment and only recently started seeing a psychiatrist for medication management of his symptoms. He does not go to counseling and there is no indication that he requires case management or social work services to help manage his life. It appears that his mental health issues may be situational in nature and are closely linked to his alleged physical impairments and domestic situation.

(Tr. 28). The ALJ went on to note inconsistencies in the record concerning the alleged severity of Plaintiff's mental impairment:

> Most telling, the claimant was able to be the primary caregiver for his teenage son during the relevant period and manage a household. There is no evidence of the claimant's physicians observing any marked mental functioning problems in the claimant or of them noting such behaviors in their treatment notes. Dr. Murthy indicated that the claimant has marked and extreme limitations…but his treatment notes do not support those assessments.

(Tr. 29). The ALJ concluded that Dr. Murthy's assessment should be given "little weight," since his "treatment notes do not mention any symptoms that would support the marked and extreme limitations he put in the claimant's residual functional capacity

assessment," and because "the claimant['s] activity level and Dr. Ward's assessment contradict Dr. Murthy's assessment.  (*Id.*).

Plaintiff reasons that "[i]f the ALJ could not read Dr. Murthy's treatment notes, …then a conclusion that his treatment notes 'did not mention any symptoms'…is misleading…. (Doc 12 at 11).  Plaintiff argues that even if Dr. Murthy's notes are "mostly illegible," they at least reflect "some manner" of treatment.  Plaintiff relies upon a single June 14, 2012 record that allegedly indicates symptoms consistent with Dr. Murthy's assessment, including blunt affect, depressed mood, poor concentration, persistence, and pace, poor frustration, "patchy" memory, poor social interaction, and a poor stress tolerance.  (Doc. 12 at 11, citing Tr. 469-470).  Finally, Plaintiff argues that the ALJ erred by finding Dr. Ward's assessment to be inconsistent with Dr. Murthy's opinion, because it is "actually quite consistent."  (Doc. 12 at 12, citing Tr. 430-434).

I find no reversible error.  The ALJ acknowledged Dr. Murthy's specialized training by noting he was a psychiatrist, and further acknowledged the length of treatment (since 2012) and the limited nature of the relationship – medication management only, without counseling.  The ALJ clearly articulated why she believed Dr. Murthy's opinions were not well-supported by his treatment records or other evidence, and were not consistent with other substantial evidence. The single June 2012 record is not a treatment note, but a 2-page form that offers little insight into the severity of Plaintiff's symptoms, and provides no support for marked or extreme limitations.  In fact, the record appears to be more consistent with moderate symptoms.  For example, in response to separate inquiries on the form asking for descriptions of "all significant restriction of daily activities," and "the effect of the impairment on the patient's interests,

habits, and behavior (self-care), Dr. Murthy has scrawled "affected to a moderate degree." (Tr. 469). In response to an inquiry as to the length of time that symptoms have persisted, Dr. Murthy states "several _weeks_." (Tr. 470, emphasis added). He states that the response to treatment is "fair." (_Id_.). The sole diagnosis is dysthymic disorder, and Dr. Murthy states only that Plaintiff is currently on valium, having previously tried Seroquel and two other medications.

Nor is Dr. Ward's assessment consistent with that of Dr. Murthy. Dr. Ward assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 55, consistent with moderate symptoms, not the extreme limitations offered by Dr. Murthy. (Tr. 433). Dr. Ward did not assess any marked or extreme work-related limitations, nor did he opine that Plaintiff would be absent from work more than four days of month.

In his reply memorandum, Plaintiff expands his arguments concerning why he believes remand is required, citing three unpublished cases: _Howse v. Com'r of Soc. Sec._, Case No. 2:14-cv-503, _Orick v. Com'r of Soc. Sec._, Case No. 1:10-cv-871, and _Thrasher v. Com'r of Soc. Sec._, Case No. 1:12-cv-151. The undersigned has reviewed the referenced authority, as well as the authority contained in the Commissioner's sur-reply,[1] and finds the latter authority to be the more persuasive on the record presented. _See Ferguson v. Com'r of Soc. Sec._, 628 F.3d 269 (6th Cir. 2010); _Hicks v. Com'r of Soc. Sec._, Case No. 1:13-cv-425, 2014 WL 4748356 (S.D. Ohio, Sept. 23, 2014). The cases relied upon by Plaintiff, while containing instances of remand for clarification of "illegible" notes by treating physicians, are clearly distinguishable.

---

[1]The Commissioner filed a combined motion for leave to file a sur-reply/sur-reply. (Doc. 18). Plaintiff was granted additional time to file a response to the sur-reply, but declined to do so.

*Howse* involved a mentally ill *pro se* plaintiff who failed to file a statement of errors. U.S. District Judge Marbley rejected the Report and Recommendation of the magistrate judge that the Commissioner's decision be affirmed, and reversed and remanded for further review after liberally construing a letter submitted by plaintiff to the court from her treating physician as a belated "statement of errors." In addition to giving unusual consideration to new evidence submitted for the first time to this Court, Judge Marbley pointed out that even though many of the same physician's notes were "handwritten and difficult to interpret," "the ALJ never discussed the diagnosis of bipolar disorder," which was <u>not</u> illegible but clearly noted in every record. Here, Plaintiff does not contend that the ALJ ignored a severe impairment such as bipolar disorder, nor does Plaintiff proceed *pro se*, requiring heightened scrutiny and a liberal construction of his claim. *See also Thrasher v. Com'r*, 2013 WL 486123 at **3-4 (noting the ALJ's "special" and "heightened duty" to develop the record for an unrepresented claimant, even though determining whether the ALJ has satisfied that duty "must be made on a case-by-case basis" ).

In *Thrasher*, the psychological consultant upon whom the ALJ relied did not have access to the complete record when she provided written interrogatory responses, and testified that her answers would change based upon hearing testimony concerning additional episodes of decompensation and additional evidence of mental health treatment. Despite acknowledging that the additional records were essential to a "fair" decision, the ALJ made no effort to assist the *pro se* claimant in obtaining them but instead denied the claim in the face of expert testimony that her opinions would not be valid if updated treatment records supported the hearing testimony. The ALJ also failed

to obtain any medical records regarding plaintiff's seizure disorder despite knowledge of that severe impairment. *Id.* at *10.

The *Orick* case, while not involving a *pro se* litigant, is similarly distinguishable. There, the plaintiff's treating physician had treated him for nearly five years and completed multiple opinion letters and forms. Plaintiff argued that the fact that the physician's notes were "almost completely illegible" was not a "justifiable" reason for rejecting his 2009 opinion. The undersigned <u>disagreed</u>, finding that fact to be "properly considered." (Case No. 1:10-cv-871, Doc. 16 at 7). Nevertheless, remand was required based upon the ALJ's failure to "identify or even mention" additional assessments and opinions by the same physician over a period of years, the lack of a full explanation or "good reasons" for rejecting the physician's 2009 opinions, and because he was "the only treating physician or record and his treatment of Plaintiff appears to constitute the majority of Plaintiff's medical care during the relevant period." (Doc. 16 at 11).

Unlike the cases relied upon by Plaintiff, Plaintiff does not proceed pro se and the ALJ had no heightened duty to develop the record. Reviewing the record as a whole, the undersigned concludes that the ALJ complied with SSR 96-5p, which requires an ALJ to make "every reasonable effort" to re-contact a treating source if: 1) the evidence does not support a treating source's opinion on any issue reserved to the Commissioner; and 2) the adjudicator cannot ascertain the basis of the opinion form the case record. SSR 96-5p, 61 FR 34471 (1996). While the first requirement was met, the second was not.

The undersigned has carefully reviewed all records submitted by Dr. Murthy including the 3½ pages of handwritten clinical notes spanning his entire treatment of

12

Plaintiff from January 2012 through April 8, 2013.  (Tr. 496-500).  Although portions of the notes are illegible, they are extremely brief, containing little more than the date of the visit and (at most) a few phrases regarding medication changes.  For example, a record dated 9/20/12 contains only the date, or possibly (because it is unclear whether the phrase belongs to the next appointment date of 10/8/12) the phrase "Pt is on time – no changes STG HTG."  (Tr. 498).  The only consistent phrase that appears is "Pt is on time," which stands in pointed contrast to Dr. Murthy's opinions that Plaintiff has "extreme" limitations in maintaining regular attendance and being punctual.  A review of the records confirms that they contain minimal clinical observations and no objective data regarding Plaintiff's mental status, with more frequent references to Plaintiff's back pain or medication status.  (*See* Tr. 497, "STE HTG"; 10/8/12 record stating "back is worse"; 11/15/12 record "gets his back pain [illegible]").  The few references to mental status refer to Plaintiff's anxiety over issues with his teenage son.  (See, e.g., Tr. 498-499, 12/13/12 note: "patient is anxious – bought a [illegible] + [illegible] for his son"; 6/8/12 note: "patient is anxious – no major changes – son wants to take a year off to [illegible]"); 7/26/12 note: "son got his [illegible] finger smashed in a wood chipper"; 9/20/12 note: "son is doing great [illegible] he is enjoying….").

Therefore, the ALJ satisfied the "good reasons" standard for rejecting Dr. Murthy's unsupported opinions that Plaintiff suffers from "marked" and "extreme" limitations, and was not required to re-contact Dr. Murthy to clarify the illegible portions of his handwritten notes.  *Accord Ferguson v. Com'r of Soc. Sec.*, 628 F.3d at 273-274.

## 2.  Physical RFC

In his second assignment of error, Plaintiff criticizes the ALJ's rejection of the RFC opinion from treating physician Dr. Capurro.  Dr. Capurro opined on an RFC questionnaire dated May 22, 2013 that Plaintiff could "never" lift or carry less than 10 pounds, would miss more than four days of work per month, was not capable of working an 8 hour day, cannot walk a single city block, can sit/stand/or walk no more than 45 minutes in a day, but can perform none of those activities for even a single hour <u>total</u> in an 8-hour day and requires hourly 5-10 minute, unscheduled breaks. (Tr. 538-539).  Dr. Capurro stated that the symptoms and diagnosis that support such extreme limitations were Plaintiff's degenerative disc disease, low back pain, and radiculopathy.  (Tr. 538).

Over the course of three single-spaced pages, the ALJ accurately summarized Plaintiff's extensive history of back treatment, beginning with his original work-related injury in 2004[2] and continuing through his August 2006 surgery, subsequent epidural steroid injections, and pain management treatment from 2008-through 2013.   (Tr. 25-27).  The ALJ noted that, in the years following the 2006 surgery and particularly from 2008-on, Plaintiff's treatment was "varied."

> He was prescribed pain medication, including opioids and muscle relaxants.  In 2009, [he] underwent left and right denervation of the lumbosacral spine…. He was able to walk normally and there was no evidence of cane use.  He underwent more steroid injections and did have diagnostic facet blocks.  After the facet blocks in April 2010, the claimant reported …symptoms [that were not consistent with the blocks.  Dr. Simons also noted that each time he mentioned putting the claimant in vocational rehabilitation or the claimant going back to work that the claimant would report worsening symptoms…. It does not appear that the claimant ever went to vocational rehabilitation.  In May 2010, the claimant's urine drug screen included Soma, a muscle relaxant that the

---

[2]Plaintiff received a lump sum settlement for his work-related injury, in the amount of $95,000. (Tr. 51).

claimant was not prescribed… Dr. Simons stopped several of the claimant's prescriptions as a result and gave him some Durgesic patches. An updated MRI showed significant epidural fibrosis…. The claimant started attending physical therapy and in September 2010, he reported that he was feeling stronger and having less pain after his therapy sessions…. The claimant underwent spinal endoscopy, which reportedly improved his leg pain quite a bit…. During his treatment relationship with the claimant, Dr. Simons generally reported that the claimant's ability to walk was fair and that he had a poor to fair ability to complete activities of daily living.

The claimant was evidently discharged from pain management due to opioid dependence, although there are no records from Dr. Simons office to confirm this.  The claimant went to an urgent care center in February 2012 asking for pain medications until he could find a pain management physician…. John Capurro, M.D. advised the claimant twice that he would not engage …in pain management treatment due to his history of opioid dependence…. The claimant continued to see Dr. Capurro in 2012 and he prescribed …muscle relaxers and valium….

The claimant went to the emergency room a few times in 2012 for exacerbation of his back pain and a couple of accidents.  In February 2012, the claimant was injured when a motorcycle fell on his chest…. In April 2012, he was apparently fishing and got a hook stuck in his left leg….

(Tr. 26).  The ALJ discussed Plaintiff's most recent treatment as well:

The claimant consulted a spine pain specialist, Sairiam Atluri, M.D., in April 2013…. Dr. Atluri recommended that the claimant stay off opioids and although the claimant was initially focused on being prescribed opioids, he relented and stated that he was glad he was not on opioids any longer…. Dr. Atluri prescribed further epidural injections.

(Tr. 27).

The ALJ considered Plaintiff's complaints of disabling pain but determined that Plaintiff's testimony was "not credible."  (Tr. 27).  Despite the record evidence of a significant back impairment, the ALJ found Plaintiff to be "capable of doing more physical activity than he has alleged."  Specifically, Plaintiff

was reportedly lifting weights in 2008 and in 2012 he went fishing and rode a motorcycle….The claimant's back condition does appear to have improved since his initial injury [in 2004] and his pain is managed on non-

opioid medications. The claimant went without a pain management specialist for over a year, which indicates that his pain may not be as significant as he has alleged. Moreover, it appears that the claimant has had opioid dependence issues and his earlier reports concerning his pain and limitations may have been exaggerated in order to receive prescriptions for pain medication.

(Tr.28).

The ALJ explained that he was giving Dr. Capurro's functional assessment "little weight" based upon the fact that Dr. Capurro "did not note any such limitations in his treatment notes." (Tr. 29). For example, the ALJ noted that since Dr. Capurro indicated that Plaintiff could not sit, stand, or walk for even 1 hour <u>total</u> in an eight-hour workday, presumably meaning that Plaintiff is required to lay down nearly all of each day, he would have expected "much more aggressive treatment of his back condition." (Tr. 29). Citing Plaintiff's more "conservative" treatment in recent years, as well as the ALJ's assessment of Plaintiff's activity level and discounting his subjective complaints of disabling pain, the ALJ determined that Plaintiff retains the ability to perform sedentary work. (Tr. 30).

Plaintiff argues that the ALJ erred by rejecting the completely disabling limitations offered by Dr. Capurro, which would have precluded even sedentary work, while simultaneously giving only partial weight to two agency consultants who opined that Plaintiff could engage in light level work. Concerning the consultants, the ALJ stated that "[e]vidence received at the hearing level indicates that a sedentary level residual functional capacity better accommodates the claimant's physical impairments" and "takes into account the claimant's subjective complaints." (Tr. 29).

16

Plaintiff contends that the ALJ's failure to employ and rely upon a medical expert ("ME") to formulate his physical RFC constitutes reversible error.[3]  Plaintiff acknowledges that the decision to obtain the testimony of an ME is "inherently a discretionary decision" under controlling authority, *see* 20 C.F.R. §§1527(e)(2), 404.1529(b), but argues that it was an abuse of discretion not to obtain ME testimony in light of the "sheer amount of evidence showing limitations, combined with Plaintiff's complex and changing treatment for his lumbar spine impairment."  (Doc. 12 at 15). He argues that the ALJ lacked the "medical expertise to interpret all of the physical medical evidence" and to determine Plaintiff's physical RFC "in the absence of reliance on a physician's or other medical source's interpretation of the evidence."  (*Id.*).

Neither the regulations nor any controlling case law require an ALJ to rely solely on a medical opinion to formulate a claimant's RFC.  To the contrary, the regulations state that it is the ALJ who is responsible for determining a claimant's RFC based on the evidence as a whole.  *See* 20 C.F.R. §§404.1546(c); 416.946(c)("the administrative law judge...is responsible for assessing your residual functional capacity."); *see also Coldiron v. Com'r of Soc. Sec.,* 391 Fed. Appx. 435, 439  (6th Cir., Aug. 12, 2010)(confirming that the "responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician.").  "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rending an RFC finding."  *Id.*; *see also* 20 C.F.R. §§404.1527. 416.927, "the final responsibility for deciding these issues [RFC and disability] is reserved to the Commissioner."

---

[3]It is unclear whether Plaintiff ever made any formal request for a medical expert.  He complains only that the ALJ abused her discretion in failing to retain one of her own accord.

While it is true that this case involved a review of a 9-year history of treatment for a back impairment in the context of Plaintiff's DIB claim (which required proof of disability prior to 12/2010) and SSI claim,[4] Plaintiff points to no error in the ALJ's recitation or interpretation of the medical evidence that she reviewed, nor does he identify any specific "raw data" that he believes was misinterpreted.  Courts have found no abuse of discretion and no duty to retain an ME in many other cases involving more voluminous medical records.  *See, e.g., Manuell ex rel. Manuell v. Comm'r of Soc. Sec.*, No. 1:11-CV-264, 2013 WL 1281746, at *3 (S.D. Ohio Mar. 27, 2013) *report and recommendation adopted,* No. 1:11-CV-264, 2014 WL 5089415 (S.D. Ohio Oct. 9, 2014)(no duty to retain ME despite voluminous medical record containing nearly 1,000 pages spanning nearly a decade, citing *Simpson v. Com'r of Soc. Sec.*, 344 Fed. Appx. 181, 189 (6th Cir. 2009)).

In formulating Plaintiff's physical RFC, the ALJ acknowledged the conflicting opinions, including two that limited Plaintiff to light level work, and one from a treating physician that limited him to less than sedentary work.  The ALJ adequately explained why Dr. Capurro's opinions were not entitled to controlling weight – because they were not consistent with either objective medical evidence, with Dr. Capurro's own treatment records, or with other substantial evidence in the record.  In fact, Plaintiff himself testified that he switches between sitting/standing and walking every "45 minutes to an hour," <u>throughout</u> the day, which is in contrast to Dr. Capurro's opinion that he can stand or sit a <u>total</u> of less than 1 hour in an 8-hour day.  (Tr. 52). Likewise, the ALJ adequately explained her reasons for giving only some weight to the physical RFC

---

[4]SSI benefits are payable only for the month prior to the onset of disability.

opinions of the two consultants.  As noted in *Rudd v. Com'r of Soc. Sec.*, 531 Fed. Appx 719 (6th Cir. 2013), "[t]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"  *Id.* at 728, citing SSR 96-5p.  Courts may not "reweigh conflicting evidence on appeal, but instead must affirm" if substantial evidence supports the ALJ's decision.  *Haun v. Com'r of Soc. Sec.*, 107 Fed. Appx. 462 (6th Cir., Aug. 2, 2004).  Because Plaintiff has failed to carry his heavy burden to show that the ALJ abused her discretion in failing to retain a medical expert in this case, and because the physical RFC is supported by substantial evidence in the record as a whole, the undersigned finds no basis for remand.

### 3. Credibility Determination

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

There is no question that pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Sec'y of H.H.S.,* 667 F.2d 524, 538 (6th Cir.1981).

> In order to find a claimant disabled on the basis of pain alone, the ALJ must first determine whether there is objective medical evidence of an underlying medical condition. *Duncan [v. Sec'y of HHS,* 801 F.2d 847, 852–53 (6th Cir. 1986)]. If there is, the ALJ must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged; or (2) whether the objectively established underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id.* at 853. Although the plaintiff is not required to provide "objective evidence of the pain itself" in order to establish that he is disabled, *id.,* statements about his pain or other symptoms are not sufficient to prove his disability. *Id.* at 852 (citing 20 C.F.R. § 404.1529). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence ... would lead to a conclusion that [plaintiff is] disabled." 20 C.F.R. § 404.1529(a).

> In addition to the objective medical evidence, the ALJ must consider other evidence of pain, such as evidence of plaintiff's daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes; treatment other than medication plaintiff has received for relief of his pain; any measures plaintiff uses to relieve his pain; and other factors concerning his functional limitations and restrictions due to pain. *Felisky v. Bowen,* 35 F.3d 1027, 1037–38 (6th Cir.1994) (citing 20 C.F.R. § 404.1529).

> In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly.

*Manuell ex rel. Manuell v. Comm'r of Soc. Sec.*, No. 1:11-CV-264, 2013 WL 1281746, at *3-4 (S.D. Ohio Mar. 27, 2013) *report and recommendation adopted,* No. 1:11-CV-264, 2014 WL 5089415 (S.D. Ohio Oct. 9, 2014).

Considering that the ALJ limited Plaintiff to sedentary work with a number of non-exertional limitations, she clearly recognized that Plaintiff has significant restrictions due to his chronic back pain and/or his mental impairment.  However, she found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms,… the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (Tr. 27).  In other words, the ALJ found Plaintiff's chronic pain to be limiting but not disabling, based upon a conclusion that Plaintiff's "testimony concerning the presence of incapacitating discomfort and associated functional limitations was not credible."  (*Id.*).  In reaching this conclusion, the ALJ stated that she had carefully considered Plaintiff's activities of daily living, the location, duration, frequency and intensity of Plaintiff's pain and/or other symptoms, factors that precipitate and aggravate those symptoms, the type, dosage, effectiveness, and side effects of medication, treatment other than medication, and other measures, aside from treatment, that Plaintiff uses to relieve his symptoms.  (Tr. 28-29, citing SSR 96-7p).  The ALJ stated that Plaintiff's "credibility as a historian of his symptoms and limitations is diminished due to the inconsistencies between [his] activity level and his alleged disability," such as evidence that he went fishing, lifted weights, and rode a motorcycle, received little mental health treatment other than medication, and "[m]ost telling, …was able to be the primary caregiver for his teenage son during the relevant period and manage a household."  (Tr. 29).

As is common in cases alleging disabling pain, Plaintiff's credibility was a central issue.  In an attempt to make a "compelling" case for overturning the ALJ's adverse

credibility determination, Plaintiff argues that the ALJ erred by referring to his psychiatric treatment as "recent[]," insofar as he began treating with Dr. Murthy in January 2012, noting three pages in which "anxiety" was mentioned in 2006.  Considering the fleeting nature of the references on which Plaintiff relies, I find no error in the ALJ's characterization of Plaintiff's period of treatment.  His treatment with his psychiatrist, Dr. Murthy, is fairly described as recent when viewed in the context of his 2004 alleged onset of disability.

Plaintiff was questioned by the ALJ about references to a motorcycle and a fishing incident in the medical records.  He protests that the ALJ did not credit his explanations.  Plaintiff testified that he tried fishing "one time" at the suggestion of his therapist, but did not try again because he ended up injured.  He explained that when he went to pull the line in, the hook came "flying back at me and I couldn't move" in time to avoid the hook, due to his back impairment.  (Tr. 53).  The ER record states that Plaintiff "tumbled down a 30-40 foot steep deer trail" while fishing.  (Tr. 452, 483-484).  Similarly, although Plaintiff initially told the ALJ that he last rode a motorcycle "in the '90s," when questioned about a more recent medical record wherein he reported a motorcycle fell on him, he testified that owned a motorcycle as "an investment," but had tried to ride it only "once."  (Tr. 54).  As the Commissioner points out, the ALJ was entitled to consider these activities, including that Plaintiff had apparently hiked up the steep deer trail in order to fish, despite completing a disability report in January 2012 that he was in so much pain that he had trouble putting on his shoes.  (Tr. 224).

Plaintiff also complains that the ALJ discounted his credibility based upon an October 14, 2008 reference to him being injured while he was lifting weights,

"particularly as it does not seem Plaintiff made any allegations as to his capacity for lifting," the record does not state the amount of weight he was lifting at the time, and he was actually "injured by lifting these weights."  (Doc. 12 at 17).  However, Plaintiff essentially claimed that he could not lift any weight, insofar as Dr. Capurro opined that Plaintiff could "never" lift or carry less than 10 pounds.

Last, Plaintiff contends that the ALJ should not have discounted his pain complaints "even though the record does indicate that Plaintiff had noted issues with his opioid medications at one point," because "the ALJ points to no evidence which supports her assumption that he exaggerated his symptoms to receive addictive pain medications."  (Doc. 12 at 18).  The Defendant counters that the ALJ made a "reasonable inference based on all of the evidence."  While multiple interpretations of the record may exist, the relatively modest burden that constitutes substantial evidence can be found to support the ALJ's inference.  (*See, e.g.*, Tr. 323, 446, 456, 503, 505, 508).

In his reply memorandum, Plaintiff argues that the fact that the record shows a dependence on narcotic pain medications does not mean that he exaggerated his pain symptoms.  He also contends that the ALJ's interpretation of the evidence of the motorcycle, weight-lifting, and fishing incidents punishes him "for attempting to lead a normal life despite his limitations."  (Doc. 17 at 3, citing *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990)).

The undersigned is not without sympathy for Plaintiff's arguments, but affirms based upon controlling case law that: (1) places special deference on credibility determinations; (2) defines substantial evidence as "more than a scintilla but less than a

preponderance," *see Gaffney v. Bowen*, 825 F.2d 98 (6th Cir. 1987); and (3) bars this Court from reversing merely because substantial evidence can be found to support a contrary determination.  As other courts have noted, many people experience chronic pain that is less than disabling.  *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling).  In most cases, as in this one, a determination of whether a plaintiff's pain is disabling rests in part on a credibility determination.  Based on the record as a whole, the undersigned finds no reversible error in the credibility determination made in this case.

### 4.  Hypothetical to VE

Plaintiff's last assertion of error is wholly derivative of his first two claims.  He argues that because the ALJ failed to properly assess his mental RFC (by adopting all of Dr. Murthy's opinions) and failed to properly assess his physical RFC (by adopting Dr. Capurro's limitations), the ALJ did not provide an accurate hypothetical question to the VE.  A VE's testimony constitutes substantial evidence to uphold a non-disability determination, so long as the hypothetical question "accurately portrays" the Plaintiff's individual physical and mental impairments.  *Cline v. Com'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996)(citing *Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987).  Thus, no reversible error is found here.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

STEVEN MULLINS,                                           Case No. 1:15-cv-104

               Plaintiff,                                 Beckwith, J.
                                                    Bowman, M.J.
     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).